*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. HURT-ERNSBERGER, Minor.

UNPUBLISHED
March 21, 2025
10:02 AM

No. 370609
Calhoun Circuit Court
Family Division
LC No. 2022-003236-NA

*In re* K. M. K. ERNSBERGER, Minor.

No. 371856
Calhoun Circuit Court
Family Division
LC No. 2022-003236-NA

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Respondent has a severe substance-abuse problem that dates back at least 15 years. Her substance-abuse issues resulted in the termination of her parental rights to BE and KE, the two children at issue in these appeals. In Docket No. 370609, respondent appeals as of right the trial court's order terminating her parental rights to BE under MCL 712A.19b(3)(c)(*i*), (i), and (j). In Docket No. 371856, respondent appeals as of right the trial court's order terminating her parental right to KE under MCL 712A.19b(3)(i) and (j). For the reasons set forth in this opinion, we affirm in both appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent has given birth to four children: AE, EE, BE, and KE. However, as will be explained in greater detail below, only her parental rights to BE and KE are at issue in these appeals. In the fall of 2022, respondent gave birth to her third son, BE. Shortly after his birth, doctors diagnosed BE with a heart issue that required medical monitoring. BE remained in respondent's care for approximately three months. In December 2022, Children's Protective

Services (CPS) learned that respondent had allegedly failed to promptly seek urgent medical care after BE became unresponsive. On December 8, 2022, petitioner, the Department of Health and Human Services (DHHS), petitioned the court to take jurisdiction over BE and remove him from respondent's care. The petition alleged that respondent had used illegal substances during her pregnancy, failed to attend newborn appointments, failed to promptly seek emergency medical treatment for BE, and failed to attend a follow-up appointment. The court authorized the petition, and formally removed BE from respondent's care.

On the basis of respondent's plea, the court took jurisdiction over BE and ordered respondent to comply with a treatment plan designed to remove the barriers to reunification. After approximately one year, the DHHS filed a supplemental petition seeking termination of respondent's parental rights. Following a hearing, the trial court terminated respondent's parental rights. In April 2024, respondent filed the appeal in Docket No. 370609.

Less than one month after the court terminated respondent's parental rights to BE, respondent gave birth to KE. Within a few days after KE's birth, the DHHS filed a petition seeking termination of respondent's parental rights to KE at the initial disposition. While the matter awaited adjudication and disposition, respondent, on May 28, 2024, tested positive for amphetamines, methamphetamines, and Ecstasy. The drug screen also found trace amounts of other drugs. At that time, respondent was residing at the Women's Life Recovery Program (WLRP), an inpatient substance-abuse treatment facility. Following a June 2024 adjudication, the court found statutory grounds to assume jurisdiction over KE. Then, during the July 2024 dispositional hearing that followed, the court found clear and convincing evidence to terminate respondent's parental rights to KE under MCL 712A.19b(3)(i) and (j) and further found that termination of her parental rights was in KE's best interests. Thereafter, respondent filed the appeal in Docket No. 371856. This Court consolidated the two appeals.[1]

## II. DISCUSSION

### A. DOCKET NO. 370609

In Docket No. 370609, respondent challenges the trial court's finding that there existed clear and convincing evidence to terminate her parental rights to BE under MCL 712A.19b(3)(c)(*i*), (i), and (j). Respondent also argues that the trial court clearly erred when it concluded that termination of her parental rights was in BE's best interests. The record demonstrates that both arguments lack merit.

### 1. STATUTORY GROUNDS

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). We review the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if we are left with a definite

---

[1] *In re B Hurt-Ernsberger*, unpublished order of the Court of Appeals, entered August 6, 2024 (Docket Nos. 370609 and 371856).

and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

The trial court terminated respondent's parental rights to BE under MCL 712A.19b(3)(c)(*i*), (i), and (j), which permit termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> *  *
>
> (i)  Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

For the reasons stated below, we conclude that the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j).  Moreover, because only one statutory ground is required to terminate parental rights, it is unnecessary to consider whether the court clearly erred by terminating respondent's parental rights under MCL 712A.19b(3)(i).

Clear and convincing evidence supported the trial court's determination that the conditions that led to adjudication—respondent's substance-abuse issues—continued to exist and would not be rectified within a reasonable time.  The evidence showed that respondent has a severe substance-abuse history dating back over 15 years.  Respondent's addiction issues began when she was prescribed Adderall and pain pills as a child.  Respondent candidly admitted that, over the years, she abused prescription medications, alcohol, heroin, and methamphetamines.  In 2017, the DHHS filed a petition relative to her two oldest children, AE and EE, that resulted in the two children being placed in guardianships with a maternal great-grandmother and a paternal grandmother, respectively.

In 2022, CPS again investigated respondent after receiving complaints that she failed to take BE, then three months old, to the hospital after he apparently stopped breathing.  As a result of that investigation, CPS concluded that because of substance abuse and housing instability, BE was at risk of harm in respondent's care.  Accordingly, on December 6, 2022, the DHHS petitioned the court to take jurisdiction over BE and remove him from respondent's care.  After the court authorized the petition, respondent entered a plea admitting that she tested positive for amphetamines and cannabis during her pregnancy, she had a substance-abuse history, and her

substance abuse impaired her ability to safely parent BE. On the basis of respondent's admissions, the court took jurisdiction over BE.

At the January 2023 dispositional hearing, respondent was ordered to comply with and benefit from a treatment plan designed to address her severe substance-abuse issues, poor parenting skills, and housing insecurity, among other matters. During the 10 months that followed, respondent did not participate in the treatment plan in any meaningful way. Indeed, she admits that she continued to use methamphetamines, that she became pregnant with a fourth child (KE), and that she continued to abuse substances after she discovered her pregnancy in September 2023. Despite multiple referrals, respondent failed to participate in a psychological evaluation and mental-health services. Respondent was also homeless, unemployed, and noncommunicative with the caseworker. Perhaps most troubling, respondent did not visit BE from December 2022 until November 2023. In light of respondent's failure to even minimally comply with services, the trial court properly concluded that clear and convincing evidence demonstrated that the conditions that led to adjudication continued to exist.

Nonetheless, respondent argues that insufficient evidence existed to terminate her parental rights under MCL 712A.19b(3)(c)(*i*) because, at the time of termination in March 2024, she had participated in an inpatient substance-abuse program for four months. Respondent asserts that, in light of that fact, the court erred by concluding that the conditions that led to adjudication, i.e., respondent's substance abuse, continued to exist. We disagree. Although at the time of the March 2024 termination hearing, respondent was participating in inpatient treatment, the evidence did not show that she had adequately addressed her substance-abuse issues because she failed to demonstrate an ability to remain sober when not in a significantly controlled and supervised environment.

The testimony established that, at the time of termination, respondent had completed only four months of a six-month inpatient program through the WLRP. Moreover, there existed insufficient evidence that respondent was substance free while in the program. The WLRP tested respondent for controlled substances approximately once a month, but her court-ordered treatment plan required her to submit to weekly random drug screens. The DHHS agreed that the program's staff could administer respondent's random drug tests, but respondent was still expected to call daily to determine if she was required to submit to a drug screen on a given day. A case manager at the WLRP testified that respondent submitted to all of the required drug screens and that she consistently tested negative for controlled substances. The manager ultimately admitted, however, that it was possible that respondent missed screens and that the manager did not know how many screens the WLRP had forwarded to the DHHS caseworker. By contrast, the DHHS caseworker testified that respondent missed 11 of the 16 required drug screens and that missed screens were presumed to be positive.

On this record, the trial court did not clearly err when it concluded that, at the time of the March 2024 termination hearing, respondent had failed to adequately address her substance-abuse issues, that is, the conditions that led to adjudication continued to exist. Respondent admitted that during the overwhelming majority of the case, she abused methamphetamines and was homeless. Although respondent claimed that she was clean and sober for a brief period of time, the evidence was insufficient to substantiate her claim. "Even if conditions improved in the months before the termination hearing a trial court may look to the totality of the evidence to determine whether a

parent accomplished a meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022).

Further, clear and convincing evidence demonstrated that the conditions that led to adjudication would not be rectified within a reasonable time. Respondent had a significant substance-abuse history marked by brief periods of sobriety, followed by relapses. After adjudication in this case, ten months elapsed while respondent made absolutely no efforts toward reunification. At the time of termination, respondent had yet to complete her inpatient program. Although respondent appeared to be doing well in her residential program at the time of termination, the testimony suggested that she would require a lengthy period of counseling and supervision before reunification with BE could even be contemplated. Indeed, although respondent was in a six-month inpatient program, she testified that she might extend her participation by 30 days, and she had the option to stay up to one year. The facility's case manager testified that respondent had three more months of inpatient treatment, but then explained that the program might be extended because respondent was expected to give birth to another child.

Moreover, the DHHS caseworker testified that, in the past, respondent had participated in more than one inpatient program with little to no success. At the time of termination, BE was 18 months old. He had been out of respondent's care and in relative placement for 15 months. Even assuming that respondent could rectify the conditions that led to adjudication within the next six months to a year, it was not a reasonable amount of time to make BE wait considering his young age and the length of time that he had already been in care. See *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991) ("The trial court's decision to terminate appropriately focused not only on how long it would take respondent to improve her parenting skills, but also on how long her three children could wait for this improvement."). Because "the totality of the evidence amply support[ed]" a finding that respondent had not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction over BE, see *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), the trial court did not clearly err by finding that clear and convincing evidence supported the termination of respondent's parental rights under § 19b(3)(c)(*i*).

Based on the same evidentiary record, the trial court also did not clearly err by finding that clear and convincing evidence supported the termination of respondent's parental rights under § 19b(3)(j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that child will be harmed if returned to the parent's home." *Id*. at 711. As discussed, the evidence showed that respondent admitted her substance abuse impaired her ability to safely parent BE, that she nonetheless continued to abuse substances and failed to participate in her treatment plan designed to address that abuse until November 2023, and that she missed a significant number of drug screens that her service plan required her to take. Considering this evidence and respondent's history of sobriety for brief periods, followed by relapses, we see no clear error in the trial court's conclusion that there existed a reasonable likelihood of harm to BE if he was returned to respondent's care. Thus, the trial court properly terminated respondent's parental rights under § 19b(3)(j).

In addition, the trial court terminated respondent's parental rights to BE under MCL 712A.19b(3)(i). That statutory ground permits the termination of parental rights if there exists

clear and convincing evidence that a parent's parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect and the parent has failed to rectify the conditions that led to the prior termination of parental rights. Respondent's parental rights to BE's older half-siblings, AE and EE, were terminated after respondent failed to comply with guardianship agreements that had been reached regarding those children.

However, in July 2024, this Court reversed the order terminating respondent's parental rights to AE and EE on the basis that clear and convincing evidence did not show that respondent failed to substantially comply with a support order for a period of 2 years or more. *In re Ernsberger*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 369225). The record showed that respondent failed to substantially comply with a support order for only 22 or 23 months rather than 24 months as the statute required. *Id*. at ___; slip op at 4-5. Because this Court reversed the order terminating respondent's parental rights to AE and EE, the trial court's order terminating respondent's parental rights to BE is erroneous to the extent that the court relied on § 19b(3)(i) in doing so. Reversal is not required, however, because only one statutory ground must be established to terminate parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). As discussed above, the trial court did not clearly err by finding that termination of respondent's parental rights to BE was justified under § 19b(3)(c)(*i*) and (j). Therefore, any error in relying on § 19b(3)(i) as an additional ground for termination was harmless. See *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

## 2. BEST INTERESTS

Respondent also contends that the trial court erred when it found that termination of respondent's parental rights was in BE's best interests. Because a preponderance of the evidence supported the trial court's determination, respondent's argument is unavailing.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App at 713. These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id*. at 713-714. In addition, the trial court should consider the child's safety, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests," *In re White*, 303 Mich App at 713, and the court's focus must be on the child, not the parent, *In re Moss*, 301 Mich App at 87. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App at 129.

At the time of termination, BE was 18 months old. He had spent the overwhelming majority of his young life in the care of his maternal great-grandmother, who also cared for one of BE's half-siblings. BE was doing well in his great-grandmother's care, all of his needs were being met, and his great-grandmother was willing to adopt him. By contrast, respondent was still in an inpatient rehabilitation program, and it was unclear when she would complete the program. In addition, respondent lacked suitable housing and had been unemployed since 2020. Respondent had not completed a psychological evaluation, and the DHHS caseworker testified that she was concerned about respondent's ability to stay clean because of her history of relapsing. The caseworker questioned whether respondent had the mental stability or the means to care for BE when she was released from the inpatient program.

When considering a child's best interests, the court may consider the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Moreover, the trial court may consider the possibility of adoption. *In re White*, 303 Mich App at 713. Because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with a relative when the case proceeds to termination is a factor to be considered when determining whether termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted). In this case, the trial court specifically considered the fact that BE was placed with a relative. It then properly balanced the relevant factors and did not clearly err by finding that termination of respondent's parental rights was in BE's best interests despite his placement with a relative.

The court also considered and rejected the possibility of a guardianship with the great-grandmother. A trial court is not required to establish a guardianship if it is not in the child's best interests to do so. *In re Mason*, 486 Mich at 168-169. The trial court rejected a guardianship or indefinite relative placement because it found more compelling BE's needs for stability, permanency, and finality. The court also determined that the relationship between respondent and the relative caregivers had deteriorated to the point that the individuals could no longer cooperate in a meaningful way. We see no error in the trial court's assessment of guardianship as an option.

In addition, the court considered whether a parent-child bond existed between respondent and BE. Between November 2023 and March 2024, respondent participated in approximately five visits with BE. Two or three of the visits were in-person; the rest were by video. The court concluded that no bond could possibly exist between respondent and BE considering their limited contact. A preponderance of the evidence supported that conclusion, which weighed in favor of terminating respondent's parental rights.

Finally, the court considered the fact that BE was placed in a home with his half-sibling. As part of its best-interests determination, a court may consider sibling relationships. See *In re Olive/Metts Minors*, 297 Mich App at 42. This factor clearly weighed in favor of the court terminating respondent's parental rights. With the termination of respondent's parental rights, BE had the opportunity to share the same home with his biological half-brother.

On this record, the trial court did not clearly err when it found that termination of respondent's parental rights was in BE's best interests. Despite being provided a multitude of services, respondent was not in a position to safely and consistently parent her son. Continuing a parent-child relationship would have been detrimental to BE's physical, educational, and

emotional well-being. The court properly weighed the appropriate factors when considering BE's best interests, and a preponderance of the evidence supported terminating respondent's parental rights.

## B. DOCKET NO. 371856

In Docket No. 371856, respondent argues that the trial court erred by terminating her parental rights to KE because the DHHS failed to make reasonable effort to reunify her with KE. Because this issue is unpreserved,[2] our review is limited to plain error affecting respondent's substantial rights. See *In re Barber/Espinoza*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369359); slip op at 3 (applying plain-error review to proceedings to terminate parental rights). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); see also *In re VanDalen*, 293 Mich App at 135. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008); see also *Carines*, 460 Mich at 763. Once these requirements are satisfied, "an appellate court must exercise its discretion in deciding whether to reverse." *Carines*, 460 Mich at 763. Reversal is not warranted if the plain, forfeited error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 763-764.

Generally, before a court may contemplate termination of a parent's parental rights, the DHHS must make reasonable efforts to reunite the family. MCL 712A.19a(2). Reasonable efforts must be made in all cases except those involving the circumstances delineated in MCL 712A.19a(2). *In re Mason*, 486 Mich at 152. "[T]he department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Sanborn*, 337 Mich App 252, 259; 976 NW2d 44 (2021) (quotation marks and citation omitted; alteration in original). The DHHS's statutory duties to update a parent's treatment plan and provide the parent with necessary and relevant reunification services continue throughout the case. *In re Mason*, 486 Mich at 156. "The adequacy of the [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). After reviewing the record, it is readily apparent that the DHHS made reasonable efforts to reunify respondent with

---

[2] Respondent failed to object to the reasonableness of respondent's efforts in the lower court. Because of the constantly changing dynamics in a child-protective proceeding, a respondent has multiple opportunities, as the circumstances change, to object to the adequacy of the services being provided. *In re Atchley*, 341 Mich App 332, 337-338; 990 NW2d 685 (2022). In *In re Atchley*, the respondents did not object to or otherwise indicate that the initial treatment plan was inadequate, but at later review hearings they challenged the adequacy of the services provided. Accordingly, this Court determined that the respondents' challenge to the adequacy of the services was properly preserved. *Id.* at 338. In this case, respondent never challenged the adequacy of the services provided. Therefore, we conclude that this issue is unpreserved.

KE and that termination of respondent's parental rights resulted from her failure to participate in and benefit from services rather than from the adequacy of the DHHS's efforts.

Less than one month after the court terminated respondent's parental rights to BE, respondent gave birth to KE. The DHHS immediately petitioned the court to terminate respondent's parental rights to KE at the initial disposition. The court authorized the petition at the preliminary hearing and permitted respondent to have supervised or unsupervised parenting time at the DHHS's discretion. In addition, the court ordered that reasonable efforts be made to preserve and reunify the family. On May 3, 2024, the DHHS created an initial case-service plan for respondent that outlined the services that had been provided and would continue to be provided in furtherance of the concurrent goals of adoption and reunification.

The record is quite clear that respondent was offered a multitude of services over several years to address her substance-abuse issues, poor parenting skills, and unstable housing. During the 2017 child-protective proceedings regarding AE and EE, respondent was offered services. After the court assumed jurisdiction of BE in January 2023, respondent was offered a treatment plan that included substance-abuse treatment, parenting time, drug screens, parenting classes, and mental-health treatment. For nearly one year, respondent failed to comply with any of those services. In November 2023, respondent enrolled in inpatient treatment and remained in inpatient treatment throughout KE's proceeding. The residential treatment facility offered respondent drug screening and in-house counseling services. Concurrent with her inpatient treatment, respondent received a multitude of outside supportive services from at least three other entities. Even after the court terminated respondent's parental rights to BE in March 2024, services continued and the DHHS caseworker continued to work with respondent in anticipation of KE's impending birth. The caseworker testified that after KE's birth, she worked in conjunction with the WLRP to provide respondent services.

After KE's birth, the DHHS offered respondent supportive visitation with her son. During BE's proceedings, the caseworker made multiple referrals for a psychological evaluation that respondent ignored. Those referrals continued in KE's case and respondent eventually submitted to a psychological evaluation in May 2024. Through the WLRP, respondent participated in at least two parenting classes. Respondent testified at the June 2024 adjudication trial that she had completed one parenting class and was currently enrolled in another 10-week class. She further explained that a relapse prevention plan had been added to the parenting class curriculum and that she received counseling at Summit Pointe, had a recovery coach, and participated in Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) classes. In addition, respondent testified that her medications were prescribed and monitored through Summit Pointe and Grace Heath.

Even after respondent relapsed on May 28, 2024, and some of her outside services were limited because she was forced to start the inpatient treatment program from "square one," respondent was permitted to attend parenting time with KE. She also continued to attend therapy, substance-abuse counseling, parenting classes, and NA and AA classes, and to submit drug screens at the WLRP. Despite her relapse, respondent was permitted to finish her outside programs at the Woman's Co-op and her medication reviews continued at Summit Pointe. Respondent further testified that in light of all of the services that she had been provided, she did not know of any other services she needed except those that had already been offered. Indeed, even on appeal,

respondent concedes that everything that the DHHS wanted her to do was already in place when KE was born.

Although the petition related to KE sought termination at the initial disposition, the record shows that, from the beginning, the DHHS provided respondent with the tools to facilitate reunification. Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondent to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "Not only must respondent cooperate and participate in the services, [respondent] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The record indicates that the DHHS, as well as the WLRP, offered respondent an extraordinary number of services, but respondent was either unwilling or unable to benefit from the services that were offered. Under these circumstances, respondent's assertion that the DHHS failed to make reasonable efforts toward reunification lacks merit.

Finally, in order to prevail on an argument that reunification efforts were inadequate, a respondent must establish that she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). This includes identifying the services that the DHHS should have provided. *In re Sanborn*, 337 Mich App at 266. Respondent has not identified a specific service that the DHHS did not provide that would have benefited her; nor does she explain how the services that were provided were not reasonable or appropriate. *Id*. Her failure to satisfy those obligations is fatal to her claim of error.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-10-